# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-2100
Filed April 15, 2026

————————————

**In the Interest of D.B.-C., Minor Child,**

**R.B.-C., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Buchanan County,
The Honorable Linnea M.N. Nicol, Judge.

————————————

**AFFIRMED**

————————————

Luke C. Jenson of Jenson Law Firm, PLC, Waterloo, attorney for appellant
father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Kimberly S. Lange of Public Defenders Office, Waterloo, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A father appeals the juvenile court's termination of his parental rights to his child, D.B.-C. He argues that termination of his parental rights is not in the child's best interests and, in the alternative, that a permissive exception to termination should apply. On our de novo review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

D.B.-C. was born in 2023. The Iowa Department of Health and Human Services (HHS) became involved with the family in February 2024 after an allegation of maltreatment. HHS received information that a registered sex offender was staying in the same apartment that the child was living in. Additionally, while visiting the home, a child protective worker found illegal substances. Both the mother and father were arrested, taken into custody, and later released. D.B.-C. was adjudicated a child in need of assistance (CINA) and was placed in family foster care.

At a dispositional hearing, the court adopted a permanency plan that permitted both parents supervised visits. The parents were required to participate in services offered by HHS, including substance-use evaluation and treatment, drug testing, and other rehabilitative support.

The juvenile court found that the father "did not significantly participate in the services offered by HHS." At the permanency hearing on February 24, 2025, the juvenile court ruled that the child would remain in HHS's custody for an additional six months to allow the father time to comply with the permanency plan. The father was again required to consistently engage in visitations with the child, participate in parenting programs, utilize family centered services, and comply with random drug testing.

The mother had similar requirements. Throughout the proceedings, the mother was engaged in services provided by HHS, successfully participated in random drug testing, completed the Safe Care program, and complied with other HHS services required by the juvenile court. The child was placed in the mother's custody with supervision provided by HHS, where she remains today.[1]

The father, however, failed to engage with most of the services and programs required by the court. He only participated in visits with the child sporadically and did not move on from supervised visits. The father also missed multiple drug tests and failed every drug test he completed. He only began to participate in the Safe Care program shortly before the termination trial.

On November 24, the juvenile court entered an order terminating the father's parental rights under Iowa Code section 232.116(1)(h) (2025). The juvenile court found that the statutory grounds for termination had been established, termination was in the child's best interest, and no permissive exception should be applied. The father now appeals.

## STANDARD OF REVIEW

"We review termination of parental rights proceedings de novo." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

---

[1] At the time of termination, the mother and father were no longer in a relationship and were no longer living together.

# DISCUSSION

We use a three-step process to determine whether (1) a statutory ground has been established, (2) termination is in the child's best interests, and (3) any permissive exceptions to termination should be applied. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge a step, we need not address it. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The father challenges only the juvenile court's ruling as to steps two and three.

## I. Best Interests.

The father argues that termination is not in the child's best interests. The father asserts that considerations made under Iowa Code section 232.116(2) have little bearing on D.B.-C.'s situation because she has been returned to the custody of the mother. Therefore, he maintains that permanency is not relevant here and placement of the child with the mother does not require the termination of the father's parental rights.

We apply the best-interests framework under Iowa Code section 232.116(2), giving "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." We consider the child's long-term and immediate interests. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020). We must look at what the future may hold for the child if they are to be returned to the parent's care. *Id.* We do this by reviewing a parent's past performance, as it is a helpful predictor of the quality of care the parent can provide in the future. *See id.*

After reviewing the record, we find that termination of the father's parental rights is in the child's best interests. The record supports the juvenile court's findings, as the father failed every drug test he participated

in during the termination period and missed several other drug tests. He refused outpatient treatment, had periods of unstable housing, and did not begin the Safe Care program until a month and a half before the termination trial. The father infrequently attended visits, which were fully supervised. And although the frequency increased as the date of the termination trial approached, he never progressed to unsupervised visits. He would often fall asleep during the visits or would end the visits early. The HHS case worker testified that the child could not be returned to the father and recommended his parental rights be terminated.

Although the mother retains custody of the child, the father's ongoing inability to provide care means the termination of his rights should not "be countermanded by the ability and willingness of a family relative to take the child." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (citation omitted). Termination is in the child's best interests.

## II.    Permissive Exception.

The father also asserts that a permissive exception applies under Iowa Code section 232.116(3)(c). He argues that he has been present throughout the child's life, that he was making progress with the visits leading up to the termination trial, and that he has provided for the child by giving monetary gifts to D.B.-C.'s mother.

Iowa Code section 232.116(3)(c) provides that "[t]he court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Once the State has proven the grounds for termination, the burden to prove that a permissive exception applies rests on the parent. *A.S.*, 906 N.W.2d at 475–76.

5

We have no doubt that the father loves his child, but a parent's love for their child is not enough to prevent termination. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). Rather, we are concerned with "whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the parent's inability to provide for the child's needs. *Id*. The father failed to show that termination would be detrimental to the child. The child-parent-relationship assessment conducted by the Center for Foundational & Relational Wellness described the child's bond with the father to be "insecure and anxious." The HHS caseworker testified that the child was afraid of the father during most of the visits, until the few visits just before the termination trial when the child had "not appeared to be quite as scared of [the father]." Although the father may have begun to make some positive improvements in his relationship with the child, he presented no evidence that termination would negatively impact her.

The juvenile court's order terminating the father's parental rights and maintaining the child's custody with the mother under protective supervision is affirmed.

**AFFIRMED.**